John C. WALTER, Plaintiff–Appellant,

v.

Ruben M. TORRES, et al.,
Defendants–Appellees.

No. 89–1761.

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1990.

John Clements Walter, Austin, Tex., pro se.

Karen D. Matlock, Texas Atty. Gen.'s Office, Austin, Tex., for defendants-appellees.

Before POLITZ, WILLIAMS and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

■ We decide today whether members of the Texas Board of Pardons and Paroles have absolute or qualified immunity in the context of parole revocation procedure. The District Court below held that parole board members have absolute immunity both in enacting and applying their regulatory rules. Relying on the distinction between administrative and adjudicative functions for immunity purposes drawn in *Farrish v. Mississippi State Parole Board*, 836 F.2d 969 (5th Cir.1988), we hold that parole board members have absolute immunity when acting in specific cases under their rules in parole cases but only qualified immunity when enacting rules pursuant to their rule making authority granted by the state legislature. Accordingly, we AFFIRM IN PART, REVERSE IN PART, and REMAND for proceedings consistent with this opinion.

## I. FACTS AND PRIOR PROCEEDINGS

In 1978, plaintiff-appellant John C. Walter received a seven-year sentence for a drug possession conviction. One year later, he was paroled on condition that he obey state laws and not use controlled substances. He violated these terms on May 30, 1982, by possessing methamphetamine. For this offense he was indicted on July 7, 1982. One month later, he was confined in the county jail pursuant to a parole revocation warrant. Although he requested a parole revocation hearing, he agreed, because of the pending indictment, to waive the requirement that the revocation hearing be held within 90 days. He was sentenced to twelve years imprisonment for the second possession offense in November 1982.

The Texas Board of Pardons and Paroles, on March 28, 1983, recommended, without a hearing, that his parole be revoked on the ground that the second conviction proved that he violated the terms and conditions of his parole. On April 6, 1983, the Governor revoked Walter's parole, and a warrant was issued at this time to "return" Walter to prison. It is unclear from the record whether Walter was actually in or out of prison on April 6, 1983. Walter then began to serve time for both his convictions, the two sentences running concurrently. His sentence on his first conviction was served and it expired. He continued to remain incarcerated under the sentence for his second conviction until September 1986, when he was paroled for his second conviction. This parole is not at issue before us.

In revoking Walter's parole under the first conviction without a parole revocation hearing, the Board had followed its Rule 145.41(b)(5). Tex. Bd. of Pardons and Paroles, 37 Tex.Admin.Code § 145.41(b)(5). At that time Rule 145.41(b)(5) provided that a parole panel could recommend parole revocation without a hearing when the parolee had been convicted for a felony offense committed while on parole.[1] The rule was

---

1. Rule 145.41(b)(5) provided at the time of the Board's recommendation that a parole panel may:

(5) recommend revocation and request the governor to issue a revocation warrant, provided that this action shall be taken only

not valid under a state statute then in effect, Tex.Code Crim.Proc.Ann. art. 42.12 § 22. Section 22 required a hearing in all circumstances before the Board could recommend that parole be revoked.[2]

In 1985, Walter had filed a habeas corpus petition with the Texas Court of Criminal Appeals, contending that the State Board of Pardons and Paroles should have held a hearing under then effective Section 22 and *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), before recommending that his parole be revoked. The state court granted the writ of habeas corpus on July 24, 1985, on the basis of the state statute, after the seven-year sentence for the first conviction had expired. Later, the Board nevertheless conducted a hearing after the sentence had expired for the first conviction, found a violation of the conditions of his parole, and recommended revocation.

Walter then filed suit under 42 U.S.C. § 1983, claiming that the Board's enactment and application of Rule 145.41(b)(5) violated his Fourteenth Amendment right to due process. He sued members of the Texas Board of Pardons and Paroles and also its General Counsel. The district court dismissed the suit under Fed.R.Civ.P. 12(b)(6), holding that defendants possessed absolute immunity for their actions in enacting and applying Rule 145.41(b)(5). Walter appeals on the ground that defendants are only entitled to qualified immunity. We agree in part. Defendants had only qualified immunity when they enacted the rule pursuant to their specific rule making authority. Qualified immunity will shield the defendants from "civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). On the other hand, defendants possessed absolute immunity when applying their rules to particular cases because then they are acting as a quasi-judicial body, and Walter cannot recover against the defendants for this conduct.

## II. STANDING

Because the Board eventually held the required hearing and because it is unclear whether Walter suffered additional incarceration because of the Board's delay in providing a hearing, we are confronted with the issue of whether he has standing to claim that his due process rights were violated and that he deserves monetary damages.[3]

when the releasee has committed a felony offense during the time of his or her release and has been convicted at the trial court level and sentenced to penal incarceration for the offense, whether said conviction is appealed or not.

(A) ... Revocation of administrative release under subsection (b)(5) of this section shall be accomplished administratively and a releasee proceeded against hereunder shall not be entitled to an administrative revocation hearing.

The Board enacted Rule 145.41(b)(5) pursuant to the broad rule making authority granted to it at that time by the state legislature. *See* Tex. Code Crim.Proc.Ann. art. 42.12 § 22.

**2.** Tex.Code Crim.Proc.Ann. art. 42.12 § 22 at the time of Walter's parole violation provided in part:

Whenever a prisoner or a person granted a conditional pardon is accused of a violation of his parole ... he shall be entitled to be heard on such charges before the Board or its designee under such rules and regulations as the Board may adopt; providing, however,

said hearing shall be a public hearing and shall be held within ninety days of the days of the date of arrest.

**3.** It is unclear from the record whether Walter suffered additional jail time because of the delay in hearing. He was sentenced for the second conviction on November 17, 1982. The board originally scheduled a parole revocation hearing for December 7, 1982. If a hearing had been held on that date, Walter contends that he could have presented evidence that would have persuaded the board not to recommend revocation. He was unable to present this evidence at the hearing held three years later because by then one witness (his mother) had died and the other witnesses did not want to incur the expense of traveling to Huntsville when their testimony would have no impact on Walter's time in prison because by that time the original sentence had expired. Under Walter's scenario, if his hearing had been held in December, he would have convinced the Board not to recommend revocation. He contends that he then would have been released on an appeal bond. Thus, according to Walter's assertion he would

■ To meet the standing requirement of Article III of the Constitution, plaintiff must claim an actual or threatened injury that the defendant's allegedly illegal conduct caused and a favorable decision would redress. *See Adolph v. Federal Emergency Management Agency of the United States*, 854 F.2d 732, 735 (5th Cir.1988).

Could Walter have suffered an injury? This inquiry focuses on whether he has a personal stake in the litigation that will make him an effective litigant. The issue of possible injury also makes it necessary to identify, to some extent, what interests deserve court protection. *See* 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3531.4 at 419 (2d ed. 1984) ("The question whether there is an injury quickly becomes blended with the question whether to recognize the asserted interest that has in fact been impaired.")

Walter alleges he suffered the requisite injury because he was initially denied a hearing required by federal due process and had to resort to separate, post-deprivation proceedings to receive due process. This allegation provides Walter opportunity to try to prove injury and at least nominal damages under § 1983.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that a parolee's liberty "is valuable and must be seen as within the protection of the Fourteenth Amendment" and that its termination required "some orderly process, however informal." *Id.* at 482, 92 S.Ct. at 2601. The Court directed that hearings be held twice during the parole revocation proceedings—a preliminary probable cause hearing and a final revocation hearing. But *Morrissey* requires a final revocation hearing only when the Board exercises discretion.

■ Under current Texas law, at the time Walter violated his parole, parole board members had a choice in deciding whether to recommend revocation when a parolee has been convicted of committing a felony offense while out on parole. The Board no longer has that discretion; parole revocation is now mandatory in this situation. *See* Tex.Crim.Proc.Code art. 42.18 § 14(a) (Vernon Supp.1990). In the absence of discretion, no final hearing is required. *See Pickens v. Butler*, 814 F.2d 237, 239–40 (5th Cir.) (parolee entitled to show excuse for parole violation only when factfinder has discretion to continue parole; because Louisiana law requires parole forfeiture upon felony conviction, felon has no due process right to final revocation hearing), *cert. denied*, 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987).

The post-deprivation hearing did not cure any injury suffered from the initial denial meriting possible monetary damages. In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court recognized a right to sue to assert procedural due process. The plaintiffs were held to be entitled to the right to a hearing before the school suspended them from school, a right the school initially denied. They were also entitled to the full monetary damages they could prove which resulted from the initial denial of a hearing. Further, they were entitled at least to nominal damages even without proof of actual injury. *Id.* at 266, 98 S.Ct. at 1054.

have been freed from December 7, 1982 until his appeal bond expired if his hearing had been held at the proper time.

The contention is not persuasive. It appears almost certain that if the hearing had been held on December 7, 1982, his parole would have been revoked and thus he would not have been eligible for an appeal bond. The Board found that his parole should be revoked when it did hold its hearing. Walter presents no specific evidence showing why the parole board would decide not to recommend revocation in spite of a court's criminal conviction that showed a parole violation. It is also unclear from the

record whether Walter did in fact get an appeal bond after his second conviction in November 1982 (a warrant was issued on April 6, 1983, to "return" Walter to prison after the Governor revoked his parole, but it is unclear from the record whether Walter was in or out of prison at this time) or whether it is likely that he could have gotten one under the circumstances. Because of the ambiguity over whether Walter suffered additional incarceration and because we find possible requisite injury elsewhere, we proceed on the assumption that Walter suffered no additional prison time because of the Board's delay in holding a hearing.

■ Here Walter may have been injured by the initial denial of his due process rights. Like the plaintiffs in *Carey*, he is entitled to try to prove he was damaged by the denial. He is not limited solely to the opportunity to pursue separate, post-deprivation proceedings so that his due process rights are eventually given. *See also Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 973 n. 9 (5th Cir.1988) (rejecting argument that state habeas corpus proceeding provided plaintiff with an adequate post-deprivation remedy and cured any procedural due process violation).

## III. IMMUNITY

■ We turn to the issue of the scope of immunity which the law affords the parole board members. The district court granted defendants' motion for dismissal for failure to state a claim on the ground that defendants possessed absolute immunity when both enacting and applying Rule 145. We cannot affirm a dismissal under rule 12(b)(6) unless it appears to a certainty that a court can grant no relief under any set of facts provable in support of plaintiff's allegations or if the allegations, accepted as true, do not present a claim upon which relief is legally justified. *See Adolph v. Federal Emergency Management Agency of the United States*, 854 F.2d 732, 735 (5th Cir.1988). Whether a defendant possesses absolute immunity from suit is a question of law. Thus, we review the district court's decision *de novo. Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1188 (5th Cir.1989).

■ A defendant's immunity depends on function, not on identity. *Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 974 (5th Cir.1988). In mandating a "functional approach" to immunity law, the Supreme Court has also said that it "has generally been quite sparing in its recognition of claims to absolute official immunity." *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).

■ Following this functional approach, we distinguish between administrative and adjudicative conduct when determining the level of immunity, absolute or qualified, an official possesses. *See Farrish*, 836 F.2d 969. In *Farrish* we held that parole officers have absolute immunity when deciding whether to grant or deny parole since this is an exercise of adjudicative power. *Id.* at 974. On the other hand, one defendant in the case was held to have qualified immunity because he was charged with "failure to establish adequate rules and policies for preliminary parole revocation hearings," which, as an administrative activity, afforded only qualified immunity. *Id.* at 976. He did not possess absolute immunity for promulgating rules because he did not "participate in the quasi-judicial activity of revoking parole." *Id.* The court noted that "[w]e can accept the proposition that executive officers ... who directly participated in the quasi-judicial activity of revoking parole, perform a special function that requires an absolute blanket of protection. We are not persuaded, however, that other executive officers ... require such an exemption." *Id.*

The defendants here allegedly violated plaintiff's rights in their performance of two different functions. Walter's claim relies both on the Board's enactment (administrative function) and application of Rule 145.41(b)(5) (quasi-judicial function). The defendants' conduct in enacting Rule 145.41(b)(5) was entitled only to qualified immunity because the rule making was an administrative function under *Farrish.* 836 F.2d at 976. The Board enacted Rule 145.41(b)(5) pursuant to its rule making powers granted at that time in Tex.Code Crim.Proc.Ann. art. 42.12 § 22 (parolee "shall be entitled to be heard ... under such rules and regulations as the Board may adopt"); § 15(g) ("The Board may adopt such other reasonable rules not inconsistent with law as it may deem proper or necessary with respect to ... the conduct of parole and mandatory supervision hearings"); and § 18 ("The Board shall formulate rules as to the submission and presentation of information and arguments to the Board").

Because the Board was exercising a broad statutory rule making authority regarding the parole process, Rule 145.-

41(b)(5), it was enacting a regulatory rule, not an interpretative rule or a rule of practice for a judicial body. If the Board had been making a rule of practice for a judicial body, it would have been entitled to absolute immunity in making as well as applying the rule. But the rule applicable in this case, eliminating a formal hearing, shows that the Board was exercising a rule making power broader than simply making rules of practice.

Defendants argue that we rejected the distinction between adjudicative and administrative functions for immunity law purposes in *Johnson v. Kegans,* 870 F.2d 992 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). Defendants claim that our citation in *Kegans* to *Johnson v. Rhode Island Parole Board Members,* 815 F.2d 5 (1st Cir.1987) (per curiam) constituted approval of the First Circuit's rejection of the administrative/adjudicative distinction. Our citation to *Johnson v. Rhode Island,* however, dealt with the degree of immunity afforded in the performance of adjudicatory roles, not whether we should recognize a distinction between administrative and adjudicative roles. *Kegans,* 870 F.2d at 995.

In *Kegans* we also observed that *Johnson v. Rhode Island* asserted a split of authority in the Fifth Circuit on parole board member's immunity. *Id.* at 995 n. 3. This asserted intracircuit split[4] did not involve, however, whether we should recognize a distinction between adjudicative and administrative functions for purposes of immunity law. The disagreement instead concerned whether parole officers should receive qualified or absolute immunity when performing quasi-judicial functions. In *Kegans,* after careful analysis we concluded that the established law is that parole board members may claim absolute immunity in their adjudicative conduct. *Kegans* and the cases upon which it relies involved adjudicative activity.

The decision does not in any way trench upon our view that there is a distinction between administrative and adjudicative functions for purposes of immunity law. Any earlier holding that parole board members are absolutely immune because of their status as officials can no longer be the law since the Supreme Court's holding in 1988 that the approach to immunity law must be functional. *Forrester v. White,* 484 U.S. at 224, 108 S.Ct. at 542. Accordingly, we reverse the district court's holding that defendants were entitled to absolute immunity as to the function of rule making. Defendants in their administrative capacity possessed, instead, qualified immunity protecting them from personal liability for actions that "are reasonable in light of current American law." *Anderson v. Creighton,* 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987).

■ The district court did not err, however, in dismissing plaintiff's claim on immunity grounds for defendants' decision to revoke parole as such. As we noted in *Farrish,* parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers. *Farrish v. Mississippi State Parole Bd.,* 836 F.2d 969, 973–76 (5th Cir. 1988); *see also Johnson v. Kegans,* 870 F.2d 992, 995–96 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); *Serio v. Members of La. State Bd. of Pardons,* 821 F.2d 1112, 1114 (5th Cir.1987). The district court's dismissal of plaintiff's claim insofar as it applies to defendants' conduct in applying Rule 145.-41(b)(5) to his case is affirmed.

The distinction is technical but properly recognized. The members of the Board can be held liable if Walter can prove that their enactment of the rule was unreasonable and that they denied the hearing be-

---

**4.** In *Fowler v. Cross,* 635 F.2d 476 (5th Cir.1981), *Williams v. Rhoden,* 629 F.2d 1099 (5th Cir. 1980), and *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir.1979), the court "proceeded on the assumption that the relevant immunity was *qualified* immunity." *Kegans,* 870 F.2d at 995 n. 3 (emphasis in original). In contrast a different line of cases granted parole board members absolute immunity. *See Serio v. Members of La. State Bd. of Pardons,* 821 F.2d 1112, 1114 (5th Cir. 1987); *Hilliard v. Board of Pardons and Paroles,* 759 F.2d 1190, 1193–94 (5th Cir.1985) (per curiam); *Johnson v. Wells,* 566 F.2d 1016, 1018 (5th Cir.1978); *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th Cir.1974) (per curiam).

cause of the rule. These conclusions would show the requisite nexus between the adoption of the rule and whatever damages Walter can prove from the adoption of an invalid rule under facts not justifying invocation of qualified immunity by the Board members.

## IV. CONCLUSION

We conclude that Walter cannot pursue his claim that the parole board's making a parole decision without holding a hearing violated his due process rights. When making decisions as to parole, the defendants had absolute immunity. Walter can pursue his claim that the Board violated his rights in making a rule that caused them to recommend revocation of his parole without a final hearing. To recover for this alleged violation, Walter now must show that the defendants' conduct in enacting Rule 145.41(b)(5) was unreasonable, and if so he must also prove injury and damages. Accordingly, the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and the case is REMANDED to the district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART,

REVERSED IN PART AND REMANDED.