William Bond CLIFFORD, Petitioner-Appellee,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellant.

No. 71–3101.

United States Court of Appeals, Fifth Circuit.

Aug. 17, 1972.

**1192**

Crawford C. Martin, Atty. Gen. of Tex., Howard M. Fender, Clyde A. Whiteside, Austin, Tex., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Walter P. Wolfram, Amarillo, Tex., for petitioner-appellee.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from the granting of an application for a writ of habeas corpus and the subsequent entry of an order requiring that petitioner-appellee be released on parole from the Texas State Penitentiary. The trial court found that appellee had been formally paroled by the completed acts of certain state officials and that the state's subsequent refusal to release him without fully disclosing its reasons amounted to a revocation of parole that was violative of appellee's right to procedural due process. We agree with appellant that the activities of the state officials did not constitute the granting of parole and that continuing appellee's incarceration was thus wholly proper, and we reverse.

The facts of this case are basically undisputed, but the chronology of events here involved is of sufficient importance to warrant our setting it out in some detail. Petitioner-appellee, William Bond Clifford, was convicted by a jury in state district court of assault with intent to commit murder with malice and was sentenced to serve an indefinite term in the state penitentiary of not less than two nor more than twelve years. His conviction was affirmed by the Texas Court of Criminal Appeals, Clifford v. State, 424 S.W.2d 233 (Tex.Cr.App. 1968), and the validity of that conviction is not before us.

Appellee began serving his sentence on March 8, 1968. On March 16, 1970, the process of obtaining his release on parole was begun when a one-page "Parole Summary" was prepared on his behalf for presentation to the Texas Board of Pardons and Paroles. Various trial officials were notified of the pendency of parole, in accordance with Texas law. On April 14, 1970, the Board reviewed the file and initialed the Parole Summary under the heading, "PAROLE SUB-

JECT TO APPROVED RELEASE PLAN." On April 24, 1970, the Governor of Texas signed the Parole Summary under the heading, "APPROVED." On April 28, 1970, the Board set a parole release date of June 2, 1970. On April 29, 1970, a district parole officer was sent a request to prepare a "Preparole Investigation Field Report," which he submitted on April 30, 1970, and which his area supervisor approved. On May 8, 1970, the Board, without notifying Clifford, who had already been sent to the pre-release center operated by the Texas Department of Corrections, withdrew its recommendation, stamped the Parole Summary "WITHDRAWN BY BOARD," and notified the Governor's office of its action. Appellee was thereafter denied release on parole.

After unsuccessfully seeking post-conviction relief from the state courts, appellee filed an application for a writ of habeas corpus in the United States District Court for the Northern District of Texas. The court below held on these facts that parole had formally been granted and that the action of the Board on May 8, 1970, was therefore tantamount to a revocation of parole. Ruling that this "revocation" must meet both constitutional standards of procedural due process and state statutory standards, the trial court ordered appellee released on parole unless the Board of Pardons and Paroles afforded him a hearing at which the Board would disclose its reasons for its action. The Board did conduct a hearing, but asserting a need for confidentiality, it refused to reveal to appellee some of the information it had used in deciding to withdraw its approval of parole. The trial court found that this withholding of information denied appellee an effective hearing and ordered his release on parole.

The crucial issue in this appeal is the threshold issue of whether appellee had been granted a parole that was later summarily revoked, or whether the process of obtaining parole simply never reached fruition. To resolve this issue it is necessary to understand the typical procedural path that leads to release on parole in Texas. The basic roadmaps include the Texas Constitution, art. IV, § 11, Vernon's Ann.St., the Texas Adult Probation and Parole Law, Vernon's Tex. Code Crim.Proc.Ann. art. 42.12, and regulations adopted by the Board of Pardons and Paroles pursuant to a legislative grant of rulemaking power, id. § 15 (d). In essence the Texas scheme typically charts a course that passes through each of the following steps, which are either specifically authorized by article 42.12 or formally or informally applied by the Board to all parole cases: (1) preparation of a Parole Summary [§ 15 (b) and (c)]; (2) notification of the pendency of parole to specified officials in the county where the prisoner was convicted [§ 15(e)]; (3) Board action approving continuation of the parole process, indicated by initialing the Parole Summary [§ 15(a) and (c)]; (4) Governor's approval, indicated by signing the Parole Summary [§ 15(a)]; (5) completion of preparole investigation, including field reports [§§ 15(a) and (b), and 16]; (6) determination of conditions to be attached to release on parole and affixing of those conditions on the Certificate of Parole [§§ 12 and 15(d)]; (7) execution by both the Board of Pardons and Paroles and the prisoner of an agreement on the Certificate of Parole accepting the conditional release of the parolee; and (8) physical release from prison.

In the instant case, appellee never reached his intended destination, step (8), because the Board refused to allow him to accomplish step (7). At some point before the parole agreement was executed his journey was brought to an abrupt halt for reasons not fully disclosed to him. The dispositive question on appeal is one of determining at which step in the parole process a prisoner can be said to have been "paroled."

Appellee urges that "parole" occurs when the Governor indicates his approval by signing the Parole Summary sheet. To support this conclusion appellee refers us to the language of the

Texas Constitution and certain statutes. Article IV, section 11 of the Texas Constitution gives the Governor power upon the recommendation of the Board to grant reprieves, commutations of punishment, and pardons, to remit fines and forfeitures, and to revoke paroles and conditional pardons. Although the Governor is nowhere given the express power to parole prisoners, the power to grant pardons has been held to include the power to grant paroles, which are classified in Texas as conditional pardons. Ex parte LeFors, 165 Tex.Cr.R. 51, 303 S.W.2d 394 (1957); Ex parte Rice, 72 Tex.Cr.R. 587, 162 S.W. 891 (1914). But determining that the Governor has power to grant a parole does not lead ipso facto to the conclusion that the Governor's signature on a Parole Summary form in the space marked "APPROVED" is a full exercise of that power. The statutes also must be examined to determine when a parole actually becomes effective, for the Texas Constitution, art. IV, § 11, specifically provides that the legislature shall have the authority to enact parole laws.

Appellee relies principally upon article 42.12, section 15(a), which provides that "All paroles shall issue upon order of the Board, duly adopted and approved by the Governor." Appellee argues that use of the words "shall issue" conclusively demonstrates that the Governor's signature indicating his approval is the final step in the parole process and that execution by the prisoner of the agreement to accept the conditions attached to his release is merely a ministerial matter having no bearing on the consummation of the parole itself. We cannot agree. Courts have repeatedly held that "shall" does not inexorably mean "must"; rather, the context in which the word is used must be fully examined. See United States v. Cook, 7 Cir. 1970, 432 F.2d 1093, 1098; Wilshire Oil Co. v. Costello, 9 Cir. 1965, 348 F.2d 241, 243. Indeed, this court observed in Peoples Securities Co. v. SEC, 5 Cir. 1961, 289 F.2d 268, 274:

"As commonly used, of course, the word 'shall' does connote an imperative obligation as opposed to a discretionary action. [But in] Escoe v. Zerbst, 1935, 295 U.S. 490, 493, 55 S. Ct. 818, 79 L.Ed. 1566, the Supreme Court observed that the mandatory or permissive character of the word depends upon its statutory setting, upon 'a view of [its] ends and aims.' . . In Richbourg Motor Co. v. United States, 1930, 281 U.S. 528, 534, 50 S. Ct. 385, 387, 74 L.Ed. 1016, cited in Escoe v. Zerbst, the Court observed, 'Undoubtedly, "shall" is sometimes the equivalent of "may" when used in a statute prospectively affecting Government action.' The word 'shall' must be read within the context of the statute to further not frustrate the generally expressed legislative policy."

To interpret "shall" here to mean that the Governor's mere signing of the Parole Summary ends the Board's involvement in the parole process would be to ignore the context in which the word "shall" appears. The very same sentence of the statute mentions, and seems to require, an "order" of the Board; yet the Parole Summary sheet could not possibly be construed to be an order of any sort. Similarly, article 42.12, section 15(d) states, "Whenever an order for parole is issued it shall recite the conditions thereof in clear and intelligible language." Moreover, the document signed by the Governor here is not at all like the paper signed by the Governor in Ex parte Rice, *supra,* which appellee argues establishes precedent for the proposition that a "parole" once signed by the Governor cannot be summarily revoked. In *Ex parte Rice* the document read in part, "I, [the Governor of Texas], . . . hereby . . . grant . . . a conditional pardon . . . ." 162 S.W. at 899. In the instant case, however, no document purporting to grant parole was ever produced. The Parole Summary is basically only a compilation of information regarding potential parolees. It is the Certificate of

Parole, never issued to appellee here, that states, "The Board of Pardons and Paroles hereby orders that the said inmate be released on parole."

Finally, appellee advances the argument that the prisoner's signing of the Certificate of Parole is purely a ministerial act. In light of the substantive rights a parolee renounces when he accepts both the standard and any "customized" conditions of parole [1] his signing of the agreement can hardly be called meaningless or a mere formality. That a prisoner could refuse to accept conditions attached to his release and decline parole is apparent. We find that at least until the Certificate of Parole has been signed by the potential parolee, he cannot be said to have been paroled. The Governor's signature indicated only that he approved, not that he granted or ordered parole.

The State argues that a prisoner is not paroled until he is physically outside the prison walls. *See* art. 42.12, § 2(c). The position taken by the Board of Pardons and Paroles, stated by the chairman, is that "No parole is granted or effective until the parole agreement, attached to the parole certificate, is accepted and signed by the inmate." We do not decide which, if either, of these latter two views is correct, for having decided that appellee's view, accepted by the district court, is incorrect, we must reverse. We do not reach the issue of whether the hearing ultimately conducted by the Board of Pardons and Paroles satisfies constitutional and state requirements, for we determine that no parole was here granted or revoked.

The process of parole is not a symphony of hope composed by the Governor alone; rather, it is a composition by a trio of the Governor, the Board, and the inmate. Until each has fully orchestrated his part, the parole symphony is an unfinished one. The bars will not open until keyed by all three. The laws pertaining to paroles are based on a sharing of responsibility of decision and full acceptance of the decisional decree by the prospective parolee. Thus, acceptance of all standard and customized conditions of parole by the inmate is a condition precedent to the parole and it would be solecistic to say that parole exists before the conditions are accepted. Importantly, the stated conditions are the only bases for any subsequent revocation proceedings.[2] There is no provision for exacting conditions subsequent to the actual parole. Parole is an act of grace of the sovereign that exacts commitments from the inmate. Until such commitment is communicated and accepted, parole is in process but not processed.

The system, of course, often causes major disappointments, but the parole process is such a precious tool in our penology that each part must be played precisely. It is indeed lamentable that appellee should have had his hopes of release on parole raised to the heights only to have them dashed to the ground. Although their remedial action comes too late to affect the outcome of the instant case, we note that the Board of Pardons and Paroles has taken measures to ensure that this situation will not arise again.[3]

1. On the reverse side of the Certificate of Parole fourteen "standard" conditions of parole are listed. These are part of the parole agreement executed by all parolees. Representative of the conditions is the requirement that the parolee secure his parole officer's permission before doing any of the following: changing his place of residence or employment, leaving the county, purchasing or operating an automobile, or entering marriage. If "customized" conditions are to be attached to a given inmate's release on parole, space is provided on the observe side of the Certificate for "Special Conditions."

2. The Certificate of Parole twice states that violation of any listed condition is sufficient cause for revocation of parole.

3. The Board has amended the Parole Summary form by adding above the space for the Governor's signature the phrase, "PAROLE IS HEREBY ADOPTED AND APPROVED UPON ISSUANCE OF PAROLE CERTIFICATE AND EXECUTION OF PAROLE AGREE-

We conclude that Clifford was never paroled and thus cannot invoke the constitutional and statutory provisions that safeguard a parolee's rights during a revocation of parole. The case will be reversed and remanded to the district court with instructions to dismiss for lack of federal jurisdiction.

Reversed and remanded.

MENT," and by adding above the space where Board members initial the form the following paragraph:

"This parole approval is not effective or final until a formal parole agreement is entered into and signed by the inmate and the State of Texas acting through the Board of Pardons and Paroles. The approval may be withdrawn by the Board or the Governor at any time prior to the acceptance and execution of the formal parole agreement."