Daniel JOHNSON, Plaintiff–Appellant,

v.

Joe KEGANS and John Holmes, Defendants–Appellees.

No. 87–2352.

United States Court of Appeals, Fifth Circuit.

April 24, 1989.

Daniel Johnson, Huntsville, Tex., pro se.

Before GOLDBERG, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

The issue in this case is whether the district court erred in dismissing as frivolous pursuant to 28 U.S.C. § 1915(d) an *in forma pauperis* action by a state prisoner seeking damages from and injunctive relief against a county prosecutor and a state court judge under 42 U.S.C. § 1983. We hold that the judge and prosecutor are absolutely immune from liability for damages and that the allegations for injunctive relief are insufficient. We therefore affirm.

### Facts and Proceedings Below

Plaintiff-appellant Daniel Johnson (Johnson) is an inmate of the Texas Department of Corrections. On February 9, 1987, he filed this *pro se* action pursuant to 42 U.S. C. § 1983. He named as defendants Judge Joe Kegans (Judge Kegans), Judge of the 230th Judicial District Court of Harris County, Texas, and John Holmes (Holmes), District Attorney of Harris County, Texas. Johnson claims that in the fall of 1986 Judge Kegans and Holmes each filed with the Texas Board of Pardons and Parole (the Board) a letter or instrument in which they urged or recommended the Board to deny Johnson parole. Johnson alleges that Judge Kegans and Holmes filed their letters in retaliation for civil rights suits that Johnson had prosecuted against Judge Kegans and other state and county officials and that Holmes further acted "with the intent of extending Plaintiff's period of incarceration ... on the basis of unadjudicated offenses."[1] His complaint does not allege whether defendants informed the Board of those matters, nor does it otherwise allege the contents of the letters or allege that defendants made any false statements to the Board. Johnson does claim that these letters "prejudiced" him "in parole matters." In addition to damages, he seeks an injunction ordering defendants to withdraw their letters and not to engage in "future, similar acts."

Defendants were never served. Instead, on March 23, 1987, the district court granted Johnson leave to file his complaint *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), but found that Johnson had no constitutional right to parole and that defendants were absolutely immune from suit, and concluded that Johnson had therefore failed to state a section 1983 claim. The court dismissed his action as frivolous under 28 U.S.C. § 1915(d). This appeal followed.

### Discussion

A district court may dismiss an *in forma pauperis* proceeding pursuant to section 1915(d) if: "(1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law and fact; or (3) it is clear that the plaintiff can prove no set of facts in support of his claim." *Cay v. Estelle,* 789 F.2d 318, 326 (5th Cir.1986). The district court may dismiss *sua sponte* an *in forma pauperis* proceeding, *Cay,* 789 F.2d at 323, and is vested with "especially broad discretion" when making the determination of frivolousness *vel non, id.* at 325; *Green v. McKaskle,* 788 F.2d 1116,

---

**1.** Johnson does not expressly state whether defendants were or were not involved in his initial criminal trial, but given the context of his claims, it seems clear that they were.

1119 (5th Cir.1986). The district court in this case did not abuse its discretion under section 1915(d) because defendants were absolutely immune from suit and Johnson did not state a claim for injunctive relief.

## I. Absolute Immunity

It is well established that judges are absolutely immune from liability for judicial acts that are not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive. *See Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 1105–07, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Holloway v. Walker,* 765 F.2d 517, 522–25 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985); *Adams v. McIlhany,* 764 F.2d 294, 297–99 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). *See also Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). This absolute judicial immunity contrasts with the qualified immunity that executive officials generally enjoy.[2] *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Judges have absolute immunity not because of their particular location within the Government but because of the special na-

ture of their responsibilities." *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978). Officials whose responsibilities are "functionally comparable" to those of a judge are also absolutely immune from liability. *Id.* 98 S.Ct. at 2913–14. Thus, for example, federal hearing examiners and administrative law judges, *id.* at 2914, arbitrators, *Corey v. New York Stock Exchange,* 691 F.2d 1205, 1208–11 (6th Cir.1983), bar association disciplinary committee members, *Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.1978), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978) (per curiam), *rev'd sub nom. on other grounds Sparks v. Duval County Ranch Co.,* 604 F.2d 976 (5th Cir.1979) (en banc), the National Association of Securities Dealers, Inc. and its disciplinary officers, *Austin Mun. Securities v. Nat. Ass'n of Securities,* 757 F.2d 676, 689–92 (5th Cir.1985), and members of pardon and parole boards, *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th Cir.1974) (per curiam); *Johnson v. Rhode Island Parole Board Members,* 815 F.2d 5, 6–7 (1st Cir.1987), have been held absolutely immune from suit because they perform adjudicatory roles which are functionally substantially equivalent to those of judges.[3] *But see*

---

**2.** Because of his unique place in the constitutional scheme, the President is entitled to absolute immunity for his official acts. *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 2701–03, 73 L.Ed.2d 349 (1982). Similarly, legislative officers acting in the "sphere of legitimate legislative activity" enjoy absolute immunity. *See Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 1820–21, 44 L.Ed.2d 324 (1975).

**3.** In *Johnson v. Rhode Island,* 815 F.2d at 6–7, the court reviewed the degree of immunity afforded parole board members in different circuits. The court joined the Fourth, Seventh, Eighth, and Ninth Circuits in granting parole board members absolute immunity from damages for acts taken in performance of their official duties and rejected the Third Circuit's approach of granting absolute immunity only when the parole board member was engaged in adjudicatory, as opposed to administrative, duties. The court also noted but did not purport to resolve what it viewed as a split of authority in the case law in this Circuit. We address those cases here.

In *Cruz,* 502 F.2d at 1101–02, this Court first addressed the issue of immunity for parole

board members and held that members of the Texas Board of Pardons and Paroles were absolutely immune for refusing to grant parole. We have consistently reaffirmed this decision with regard to the Texas Board, *see Johnson v. Wells,* 566 F.2d 1016, 1018 (5th Cir.1978); *Hilliard v. Board of Pardons and Paroles,* 759 F.2d 1190, 1193–94 (5th Cir.1985) (per curiam), and have applied it in a suit against the Louisiana State Board of Pardons, *Serio v. Louisiana State Board of Pardons,* 821 F.2d 1112, 1114 (5th Cir.1987), which relied upon *Hilliard.*

However, in three cases involving the Florida Parole and Probation Commission or its employees, we have proceeded on the assumption that the relevant immunity was *qualified* immunity. *Henzel v. Gerstein,* 608 F.2d 654, 658–59 (5th Cir.1979); *Williams v. Rhoden,* 629 F.2d 1099, 1103 (5th Cir.1980); *Fowler v. Cross,* 635 F.2d 476, 479–80, 483–84 (5th Cir. 1981). Neither *Henzel* nor *Fowler* even mentions absolute immunity, and it is not apparent that such immunity was ever asserted in those cases. *Henzel* affirms a summary judgment for the defendant on the basis of qualified immunity, noting that "[s]tate officials are protected by a qualified immunity from

*Cleavinger,* 106 S.Ct. at 502–05 (prison disciplinary committee members have qualified, not absolute, immunity; they are not to be equated to parole board members, who are "serving essentially 'as an arm of the sentencing judge'"). These officials are sometimes labeled "quasi-judicial" officials and, as most of the above examples indicate, need not be members of the judiciary.

Prosecutors and other necessary participants in the judicial process enjoy "quasi-judicial" immunity as well. Prosecutors are absolutely immune from liability for initiating prosecutions and other acts "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246–48 (5th Cir.1985) (per curiam). This prosecutorial immunity extends to individuals serving prosecutorial functions at administrative hearings. *See Butz,* 98 S.Ct. at 2916. *Cf. Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984) (public defenders not immune). Witnesses, including police officers, are absolutely immune from liability for their testimony in judicial proceedings, *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 1113–14, 75 L.Ed.2d 96 (1983), and grand jurors, *Imbler,* 96 S.Ct. 991–92 & n. 20, and jurors, *White v. Hegerhorst,* 418 F.2d 894, 895 (5th Cir.1969), *cert. denied,* 398 U.S. 912, 90 S.Ct. 1710, 26 L.Ed.2d 74 (1970), are likewise absolutely immune from liability arising out of their service. *See also Freeze v. Griffith,* 849 F.2d 172, 174–75 (5th Cir.1988). Similarly, probation officers are immune from liability for preparing and submitting a presentence report. *Freeze,* 849 F.2d at 175; *Spaulding v. Nielsen,* 599 F.2d 728, 729 (5th Cir.1979) (per curiam). *Accord Demoran v. Witt,* 781 F.2d 155, 157–58 (9th Cir.1986).

The "cluster" of absolute immunities that protect participants in judicial and other adjudicatory proceedings exist to help guarantee an independent, disinterested decision-making process. These absolute immunities prevent the harassment and intimidation that could otherwise result if disgruntled litigants—particularly criminal defendants and inmates, both of whom have

§ 1983 damage suits upon a showing that they acted in good faith and without malice," for which *Johnson v. Wells,* among other decisions, is cited. 608 F.2d at 658–59. But *Johnson v. Wells* states that "parole officials are immune from suit for damages under ... § 1983," citing *Cruz.* And *Cruz* clearly applies absolute immunity, quoting with approval the Ninth Circuit's opinion in *Silver v. Dickson,* 403 F.2d 642, 643 (9th Cir.1968), *cert. denied,* 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969), that immunity is granted because these officials perform "'quasi-judicial functions.'" 502 F.2d at 1101. *Silver,* with which *Cruz* expresses "full agreement" (502 F.2d at 1102), also points out that this immunity is the same as that for prosecutors, 403 F.2d at 643, which is, of course, absolute. *Fowler* reverses a judgment for the defendants based on qualified immunity, reasoning that the constitutional right violated was clearly established at the time, but does not advert to absolute immunity. In *Williams,* it is inferable that absolute immunity was considered and rejected, although it is not expressly mentioned. *Williams,* citing *Henzel,* also states that "parole officials are entitled to immunity from Section 1983 damage suits for acts undertaken in good faith." 629 F.2d at 1103. *Williams* hence repeats *Henzel's* misreading of *Johnson v. Wells.* Significantly, neither *Henzel, Williams,* nor *Fowler* even cite, much less attempt to distinguish, *Cruz.*

We elect to follow *Cruz* and its progeny. Since *Cruz,* there has been no decision of the Supreme Court or of this Court en banc (and no legislation) justifying a departure from its principles, and in these circumstances subsequent panel decisions inconsistent with *Cruz* are not precedential, since one panel of this Court may not overrule another. *See Ryals v. Estelle,* 661 F.2d 904, 906 (5th Cir.1981). Further, *all* our decisions dealing with the Texas Board apply absolute immunity. Finally, as we noted in *Serio,* 821 F.2d at 1114, the Supreme Court's opinion in *Cleavinger*—rendered several years after *Fowler, Henzel,* and *Williams*—strongly implies that absolute immunity is appropriate for parole board members. *Cleavinger* holds that prison disciplinary committee members are entitled to qualified immunity, but refuses to extend them absolute immunity (although the three dissenting justices would have granted absolute immunity). In the latter connection, the Court points out that it does not equate prison disciplinary committee members to parole board members, noting that, unlike the committee, the board is a neutral and detached hearing body serving essentially as an arm of the sentencing judge. 106 S.Ct. at 502.

their liberty at stake—could vent their anger by suing either the person who presented the decision maker with adverse information or the person or persons who rendered an adverse decision. *See Butz,* 98 S.Ct. at 2913; *Holloway,* 765 F.2d at 522. When determining the scope of judicial immunity, the requirements of judicial acts and jurisdiction are to be broadly construed to effectuate these policies. *Holloway,* 765 F.2d at 523–24. A similar approach, of course, should be taken when determining whether an act by a prosecutor, juror, grand juror, or witness is integral to the judicial process and therefore protected by absolute immunity.

Turning to the acts by the judge and prosecutor here, it is not altogether clear that they were "judicial" or "prosecutorial." Sentencing is without doubt a judicial act, *see Adams,* 764 F.2d at 294. And when a prosecutor or probation officer provides information relevant to sentencing or recommends a sentence, they are clearly performing prosecutorial or quasi-judicial acts. But Johnson does not complain about his sentence or the acts of defendants with regard thereto; he in essence complains of his failure to be paroled.

■ The power to grant parole is executive. *Clifford v. Beto,* 464 F.2d 1191, 1194 (5th Cir.1972). *See also Hilliard,* 759 F.2d at 1193 (the board is an independent agency whose members are appointed by the governor). The functioning of a parole board, however, is quasi-judicial. *Cruz,* 502 F.2d at 1101. *See also Johnson v. Rhode Island,* 815 F.2d at 6. And although this Court has not previously addressed this issue, we conclude that those individuals who function before the Board in the same capacity as a prosecutor, witness, or probation officer would enjoy absolute immunity. Yet, in the very strictest sense, defendants did not act in one of these capacities before the Board.

■ Nonetheless, we conclude defendants are absolutely immune. Their acts

were intimately connected with *both* the judicial process *and* the quasi-judicial parole-granting process.

Judges, who impose sentences, and prosecutors, who best know the state's case against a defendant and recommend sentences, have a continuing official interest in the execution of sentence, due, no doubt, in part to their superior knowledge of the inmate and the crime for which he was convicted. Texas recognizes this and places upon these officials "the duty" of providing to the Board any relevant information about the inmate.

"It shall be the duty of any judge, district attorney, county attorney, police officer, or other public official of the state having information with reference to any prisoner eligible for parole to send in writing such information as may be in his possession or under his control to the board, upon request of any member or employee thereof." Tex.Code Crim.Proc. art. 42.18 § 9 (Vernon Supp.1988).

Texas requires the Board to "secure all pertinent information relating to the prisoner, including but not limited to ... any written comments or information provided by local trial officials...." Tex.Code Crim.Proc. art. 42.18 § 8(e) (Vernon Supp. 1988).

"It shall be the duty of the board at least 10 days before ordering the parole of any prisoner or upon the granting of executive clemency by the governor to notify the sheriff, the prosecuting attorney, and the district judge in the county where such person was convicted ... that such parole or clemency is being considered by the board or by the governor." Tex. Code Crim.Proc. art. 42.18 § 8(i) (Vernon Supp.1988).

Rules of the Texas Board of Pardons and Parole § 145.8(.008) (1988). In sum, these rules recognize the continuing official role of the judge and prosecutor in the execution of sentence.[4] Whether we label these

---

**4.** Nothing in Johnson's allegations indicates that the Board requested information from defendants. Nonetheless, we believe that even if defendants were not acting under a clear state law

requirement to provide any relevant information to the Board, they were acting in accordance with their roles in the judicial and quasi-judicial processes. And, if defendants were not

acts judicial and prosecutorial or a quasi-judicial equivalent to a witness or probation officer, they are functionally the sort of actions that deserve the protection of absolute immunity. To the extent that judicial immunity does not apply, quasi-judicial immunity does.

We decline to allow defendants' absolute immunity to simply disappear into some sort of theoretical gap between the judicial sentencing process and the quasi-judicial parole decision-making process. The Supreme Court has noted, with apparent approval, in connection with its discussion of lower court decisions affording absolute immunity to parole board members, that they have been described as "serving essentially 'as an arm of the sentencing judge.'" *Cleavinger*, 106 S.Ct. at 502 (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1302 n. 15 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981), which in turn quotes *Bricker v. Michigan Parole Board*, 405 F.Supp. 1340, 1345 (E.D.Mich.1975)). If parole decision making is immune because it is an extension or arm of judicial sentencing, then

those whose official roles in the judicial sentencing process leads them to also participate in the parole decision-making process should enjoy no less immunity than that afforded for their participation in the judicial process. And, if a probation officer giving sentencing information to a judge is absolutely immune, then so, too, should be a parole board employee giving parole information to the board which enjoys absolute immunity because of its quasi-judicial function. To deny such immunity to the judge or prosecutor who furnishes such information to the parole board would be wholly anomalous. We hold that defendants have absolute immunity.[5]

## II. Injunction

Johnson filed a motion for preliminary injunction with his complaint. He seeks an injunction ordering defendants to withdraw any letters to the Board, and not to file any further materials that could be construed as protesting a grant of parole. Defendants are not immune from injunctive relief, *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 1974–81, 80 L.Ed.2d 565

---

exercising a "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law," they were not acting under color of state law and were hence not subject to liability under section 1983. *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir.1984), *cert. denied sub nom. Hagerty v. Keller*, 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). *See also Smith v. Winter*, 782 F.2d 508, 512 (5th Cir.1986); *Manax v. McNamara*, 842 F.2d 808, 812–13 (5th Cir. 1988).

5. Johnson alleged that he was suing Judge Kegans and Holmes in both their individual and their official capacities. Immunity does not bar suits against defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). We treat Johnson's suit as against defendants only in their individual capacities, however. He has not made the required allegation of policy or custom, *id.* 105 S.Ct. at 3105 (discussing *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mairena v. Foti*, 816 F.2d 1061, 1063 (5th Cir.1987), *cert. denied sub nom. Connick v. Mairena*, — U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988)), on the part of Judge Kegans. In any event, Judge Kegans is a state officer and is therefore protected by Eleventh Amendment immunity. *Holloway*, 765 F.2d at 525; *Clark v. Tarrant County*, 798 F.2d 736, 744–45 (5th Cir.1986). As to

Holmes, who is a local government official and is not protected by the Eleventh Amendment, *Crane v. State of Texas*, 766 F.2d 193 (5th Cir. 1985) (suit against Texas district attorney and county he served), Johnson has alleged a policy or custom but has not named as a party the county, which is the legal entity the district attorney represents. Although a judgment against the district attorney in his official capacity may impose liability on the county that he represents if the county receives notice and opportunity to respond, *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985), a suit against the county should still name the county, *see Brandon*, 105 S.Ct. at 879 (Burger, C.J., concurring). We note that our opinion in *Mairena v. Foti*, is not to the contrary. *Mairena* assumed that a suit against a Louisiana district attorney in his official capacity was in effect a suit against the parish, but the case was apparently tried on that theory and no failure to name the parish was asserted as a defect in the suit, nor was there any claim that the parish lacked notice. Here there is no reason to allow the unserved suit to proceed with the county unnamed and the district attorney entitled to absolute immunity. Neither *Mairena* nor *Brandon* suggest that the trial court is *obliged* to allow a suit to proceed where the proper party is not named.

(1984), but Johnson is not entitled to this relief based on his pleadings. Johnson argues that the letters somehow "prejudiced [him] in parole matters" and states that the Board gave boilerplate reasons for denial. He does not contend, however, that he was otherwise eligible for or would have received parole. He states his injuries "stem from the effect on decision-making, not a predictable outcome of any particular decision." He disclaims seeking by this action to establish his entitlement to parole. It is not claimed that defendants have or purported to exercise any parole decision-making (or veto) authority. It is axiomatic that to obtain injunctive relief, Johnson must show a real danger that without the injunction he will suffer an irreparable injury. *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedures* § 2942 (1973). He has failed to allege facts so showing. Further, to the extent that Johnson might claim entitlement to injunctive relief because the letters assertedly denied him a constitutionally proper parole hearing, he must first exhaust habeas remedies. *Serio*, 821 F.2d at 1118. In other respects, he seeks meaningless relief. The Board is, according to Johnson, aware of the letters and their contents. Withdrawing the letters would not affect this knowledge. He does not suggest that there is any likelihood that he will be filing additional suits that would prompt defendants to file additional letters.

### Conclusion

Because defendants are immune from suit and plaintiff's allegations do not support his claim for injunctive relief, the district court's dismissal of this action is AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

Today we consider what is in my view quite a vexatious issue. Johnson, a prisoner acting *pro se*, claims that the defen-

dants, a state trial judge and a county prosecutor, have retaliated against him because he exercised his Fourteenth Amendment right of access to the courts. *See* Part I *infra*. Embroiling such individuals in litigations initiated by prisoners proceeding *pro se* and *in forma pauperis* could have destructive systemic effects on the administration of criminal justice in this country. Needless to say, however, we cannot assume the frivolity of prisoner-initiated litigation attempting to vindicate constitutional rights. Thus, I perceive a practical and legal problem of some magnitude lying before us.

Judge Garwood's opinion for the majority concludes that the defendants are entitled to absolute immunity from the plaintiff's Section 1983 suit. I agree that the labyrinth in which we walk leads to the conclusion that the defendants are entitled to absolute immunity. But I have weaved my way somewhat differently through the maze, so I must dissent with deference, because I believe that the majority's holding sweeps too far. I emphasize that I hold no view of the merits of this case. In fact, the plaintiff's case appears to be rather dubious. However, a remand would be appropriate based on my reasoning below. Thus, I must write in dissent although the majority and I are in basic agreement about the fundaments of this case.

A district judge has "especially broad discretion" under 28 U.S.C. § 1915(d) in deciding whether an *in forma pauperis* proceeding is frivolous, but this discretion is "limited in a *pro se* case ... by the rule in *Haines v. Kerner* [, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ] ... and in every case by the language of [§ 1915(d) ] itself." *Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir.1986) (quoting *Boyce v. Alizaduh*, 595 F.2d 948, 951 (4th Cir.1979)). I believe that the district court abused its discretion by dismissing the plaintiff's complaint under § 1915(d).[1]

---

1. The Supreme Court will decide whether the standard for dismissal of *pro se* complaints under 28 U.S.C. § 1915(d) is (1) whether a party bringing the action cannot make any rational argument in law or fact that would entitle her to

relief; or (2) is equivalent to the standard under F.R.Civ.P. 12(b)(6). *Williams v. Faulkner*, 837 F.2d 304 (7th Cir.1988), *cert. granted sub nom. Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 53, 102 L.Ed.2d 32 (1988), argued on February 22,

Four issues prompt my separate opinion. First, I read the plaintiff's complaint to set forth only one even arguable claim: that the defendants wrote letters to the Texas parole board in retaliation for the plaintiff's exercise of his constitutionally protected right of access to the courts. Such claims pose the primary systemic problems that justify the blanket protections of absolute immunity. The district court did not determine whether the plaintiff alleged facts sufficient to state a retaliation claim, holding only that Johnson has no constitutional right to parole and that the defendants are absolutely immune. Rather than decide an issue on appeal not considered by the court below, however, I would remand to allow the district court to decide in the first instance whether Johnson has stated a retaliation claim.

Second, to the extent the majority holds that absolute immunity flows in these circumstances from the parole board's immunity, I must respectfully disagree. The absolute immunity of parole board members for their quasi-judicial acts does not, I believe, serve as a basis for determining the scope of the defendants' immunity in this case.

Third, to the extent the majority holds that absolute immunity must flow in this case from a need to preserve the integrity of the processes of judicial and prosecutorial decisionmaking, I agree, but only to the extent that the information a judge or prosecutor provides to a parole board is reasonably derivative of the adjudicatory process. I would remand this case to allow the plaintiff to state why the information allegedly provided by the defendants to the parole board was not reasonably derived from the adjudicatory process.

Finally, Johnson has made allegations against the prosecutor in his official capacity which would survive if the district court on remand found that Johnson had sufficiently alleged a retaliation claim. Thus, I would remand on this issue as well. I agree that Johnson is not entitled to further consideration of his equitable claims or his damages claim against Judge Kegans in his official capacity.

## I. The Claim

Johnson primarily and most explicitly complains that the defendants sent letters to the parole board adversely affecting the board's consideration of his interest in parole. An interest in parole, however, does not support a claim for Johnson, as the majority recognizes and the district court held. *Greenholtz v. Inmates of Nebraska Penal and Cor.*, 442 U.S. 1, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Thus, this suit's relation to parole is attenuated. Yet the district judge focused and the majority focuses on the parole-oriented language in Johnson's complaint. The district court held only that (1) Johnson has no constitutional right to parole; and (2) the defendants are entitled to absolute immunity.

In my view, we should focus on the language in Johnson's complaint suggesting that the defendants retaliated against him for exercising his Fourteenth Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see Mount Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). This is the only arguable claim stated in the complaint, and we must construe the plaintiff's complaint liberally in this *pro se* action. *Bogg v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); see *Covington v. Cole*, 528 F.2d 1365, 1373 (5th Cir.1976), in which we stated that "Job-like patience should be the judicial benchmark in this area."

Although the record is before us, I would not decide in the first instance whether

1989, 57 U.S.L.W. 3602 (March 14, 1989). The Court's decision would not affect this case in its present posture under my approach because no

error of the district court involves the stringency of the standard for dismissal.

Johnson's factual allegations are sufficient to make out a retaliation claim. Plaintiffs, even *pro se* plaintiffs, must plead with factual detail and particularity the basis for their claims, *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985), but the district court did not even consider the retaliation claim, much less hold that Johnson failed to meet the *Elliott* standard. Thus, I would leave it to the district court to decide the retaliation issue on remand, as well as allow the plaintiff to address the immunity issue. *See* Part II *infra*.

## II. Absolute Immunity

Although the majority and I reach the same result concerning the immunity issue, my focus on Johnson's *retaliation* claim leads me to concentrate solely on the effect of immunity (and its absence) on the integrity of the decisionmaking process leading to conviction and sentencing. As I note above, I do not believe that parole board immunity fits into an analysis of this case.

"Absolute immunity ... is 'strong medicine, justified only when the danger of [officials' being] deflect[ed] from the effective performance of their duties is very great.'" *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988) (quoting the Seventh Circuit dissent below of Judge Posner). Thus, we allow absolute immunity to extend no further than is absolutely necessary to protect the integrity of an official's decisionmaking process. "Running through our cases, with fair consistency, is a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment. Under that approach, we examine the nature of the functions with which a particular official or class of officials has [sic] been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester*, 108 S.Ct. at 542; *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2734, 73 L.Ed. 2d 396 (1982) (protection of absolute immunity "has extended no further than its justification would warrant"). Clearly, then, absolute immunity should only attach to the extent functional necessity absolutely demands that it must attach.

*Forrester* illustrates well the narrow approach that we must take in any absolute immunity inquiry. The case demonstrates that absolute immunity is by no means guaranteed to a judge (or, *a fortiori*, a prosecutor) even when its absence will (at least marginally) affect the decisionmaking process.

In *Forrester*, the Court held that a state court judge was not entitled to absolute immunity from a Section 1983 damages suit brought by a probation officer whom the judge had dismissed. The officer alleged that in dismissing her the judge discriminated against her on account of her sex in violation of the Equal Protection Clause of the Fourteenth Amendment. After reviewing precedent, the Court held that the dismissal of the probation officer was not a judicial act, but rather constituted an administrative act not shielded by absolute immunity. *Forrester*, 108 S.Ct. at 545. The Court rejected the argument that a judge should be entitled to absolute immunity when acting within the scope of his authority, stating that such a holding would "lift form above substance" by characterizing an employment decision as a judicial act. *Id.* at 546.

The import of *Forrester* is especially significant because the Court, unanimous on this point, conceded that the argument against its position, stated by the Seventh Circuit panel majority below, carried great weight, although the Court ultimately rejected the argument. The Seventh Circuit majority stated that, " 'The evil to be avoided is the following: A judge loses confidence in his probation officer, but hesitates to fire him because of the threat of litigation. He then retains the officer, in which case the parties appearing before the court are the victims, because the quality of the judge's decision-making will decline.' " 108 S.Ct. at 545 (quoting Seventh Circuit panel majority).

Thus, the Court is unwilling to extend absolute immunity even to contexts in which the integrity of the decisionmaking

process is implicated. Instead, the Court has chosen to place the immunity analysis on a spectrum, reversing the judgment below in *Forrester* because under the facts of the case the "danger" of not providing absolute immunity was "not great enough." *Id.* at 545.

A. Parole Board–Derived Immunity.

As the majority recognizes, the parole board is an executive body acting in a quasi-judicial capacity when it performs the adjudicative function of determining whether a prisoner should or should not be paroled. But I do not believe that a judge's or prosecutor's provision of information to a parole board derivatively entitles the judge or prosecutor to absolute immunity simply because parole board members are necessarily entitled to absolute immunity in the context of their decisionmaking. *Farrish v. Mississippi State Parole Board,* 836 F.2d 969, 974 (5th Cir.1988). Consequently, to the extent the majority holds that the defendants are entitled to the immunity enjoyed by the parole board members in their adjudicative capacities, I must respectfully disagree.

Parole board members are entitled to absolute immunity in their adjudicative capacities, because of an overriding need, as with the judiciary, to preserve the integrity of their decisionmaking process. This reflects a consensus by those whose decisions hold sway that the social costs of not providing absolute immunity require a subordination of certain meritorious civil claims that a prisoner may have against a parole board or its members in a particular situation. And, in terms of regulating unconstitutional behavior by parole board members, a parole board's decisions, whatever the motive, are subject to corrective process. *See, e.g., Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

State actors who simply provide information to the Texas parole board, and who act neither under oath nor subject to cross-examination by a prisoner or his representative, are not subject to sufficient corrective process. Such persons, then, should not enjoy an absolute immunity derived simply from a parole board's members, whose own immunity comes only from the functional need to insulate their decisionmaking process. State actors who provide information to parole board decisionmakers cannot count on such inherent functionalist arguments. They must look elsewhere for protections offered by immunity.[2]

As my colleagues well-recognize, the Texas legislature has indeed placed a duty on prosecutors and judges, among others, to provide information concerning prisoners upon request of the parole board, and the parole board, indeed, must request such information. Tex.Code Crim.Proc. art. 42.-18 §§ 8(e) & 9 (Vernon supp.1988). This 1987 enactment, however, does not expressly provide protection from suit for those engaged in the provision of information. *Forrester,* 108 S.Ct. at 542. The Texas courts have not construed these provisions. And in any event, the scope of immunity under § 1983 is determined by federal law, not state law. *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 1998, 56 L.Ed.2d 554 (1978). This is true whether we characterize the immunity determination as federal common law or simply as a gloss on 42 U.S.C. § 1983. I agree entirely with the majority that the Texas statute should influence our decision to provide absolute immunity to the defendants. But the statute should influence us because it allows us to infer that the Texas legislature has made a pronouncement concerning the value of a judge's and prosecutor's information derived from the decisionmaking process leading to conviction and sentencing. In contrast, the Texas legislature has not

2. The sufficiency of state law remedies in this context is unclear. One cannot assume, of course, that state law remedies would provide sufficient corrective process for any potential problems to which I refer with respect to 42 U.S.C. § 1983.

Section 1983's criminal analogue is 18 U.S.C. § 242 (amended in 1988 by Pub.L. 100–690 to provide additional penalties in certain classes of cases). Section 242 offers some means of controlling unconstitutional behavior, but provides insufficient corrective process in this area. *See* note 4 *infra.*

stated that individuals providing information to parole boards should be derivatively blanketed by whatever immunity the members of a parole board enjoy.

Thus, to the extent the majority opinion holds that because the defendants' "acts were intimately connected with ... the quasi-judicial parole-granting process" the defendants are entitled to absolute immunity, I cannot agree. The holding "sweeps too far." *Harlow,* 102 S.Ct. at 2734. We grant absolute immunity to parole board members to preserve the integrity of their decisionmaking process, but this functional rationale does not apply to state actors who are not otherwise expressly protected by legislative enactment, and who provide information to the decisionmakers neither under oath nor subject to cross-examination. "The undifferentiated extension of absolute 'derivative' immunity ... [can]not be reconciled with the 'functional' approach that has characterized the immunity decisions of [the Supreme] Court." *Harlow,* 102 S.Ct. at 2734.

### B. Absolute Immunity Grounded in the Decisionmaking Process.

Because I believe that absolute immunity cannot flow in these circumstances from the parole board, as I discuss above in Part II(A), it must have its source, if it exists, in the decisionmaking process leading to conviction and sentencing. To the extent the majority holds that immunity flows from the adjudicatory decisionmaking process, I agree with this result. While this immunity will be overinclusive, and will allow a judge or prosecutor who acts with a retaliatory motive to escape civil liability in a particular case, I believe it is necessary to protect the systemic integrity of the adjudicatory process.

Although I have found no decision that addresses the problem we face, *see Tyler v. Ryan,* 419 F.Supp. 905, 907 (E.D.Mo.1976) (holding prosecutor immune for writing letter to parole board, citing for support only *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and offering no additional reasoning), I believe the step we are taking is weighted in the balance be-tween the functional need for immunity and the need to consider claims under the Constitution carefully. We extend the existing law that defines the scope of absolute immunity with such a holding, however, and therefore my conclusion lies within close confines. We address judicial and prosecutorial immunity in an unusual context where (1) corrective process for unconstitutional acts shielded by immunity is insufficient; and (2) the acts of defendants are not formally within their "jurisdiction" in the terms our jurisprudence has emphasized.

Our jurisprudence has commonly afforded absolute immunity to judges "from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967), *citing, Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 1976, 64 L.Ed.2d 641 (1980). "[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 1105, 98 L.Ed. 2d 331 (1978). His act must constitute a "judicial act." 98 S.Ct. at 1106. Similarly, prosecutors enjoy absolute immunity "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Supreme Court of Virginia,* 100 S.Ct. at 1977. The immunity attaches because a prosecutor's activities are an "integral part of the judicial process." *Imbler,* 96 S.Ct. at 995 (quoting court of appeals decision below).

Several considerations underlie the need to grant absolute immunity to judges, including "the need to assure that the individual can perform his functions without harassment or intimidation; ... the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; ... and ... the correctability of error on appeal." *Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507,

514–15 (1985), *citing, Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *see also Imbler,* 96 S.Ct. at 944 (public not "powerless to deter misconduct or to punish that which occurs" given prosecutor's absolute immunity). I shall discuss the immunity issue primarily with reference to judges for the sake of clarity, although my conclusions apply to prosecutors as well.

As I have noted, one must perform a strict functional analysis in determining whether absolute immunity should attach in a particular case or class of cases. It is therefore essential to understand the world in which judges and prosecutors would live if they were not entitled to absolute immunity in the circumstances of this case. Prisoners file numerous complaints *pro se* and *in forma pauperis. Cay v. Estelle,* 789 F.2d 318, 324–25 (5th Cir.1986) (quoting *Jones v. Bales,* 58 F.R.D. 453 (N.D.Ga. 1972), aff'd on basis of district court's reasoning, 480 F.2d 805 (5th Cir.1973)); *see* W.B. Turner, When Prisoners Sue: A Study of Section 1983 Litigation in the Federal Courts, 92 Harv.L.Rev. 610 (1979). If judges and prosecutors were required to defend suits like this one, they would be drawn into a significant number of cases not subject to dismissal under 28 U.S.C. § 1915(d), broad as the discretion of a district judge may be. *Cay,* 789 F.2d at 325. When prisoners allege in their *pro se* complaints that judges or prosecutors have retaliated against them for filing earlier lawsuits against the official, then *because* we give particularly liberal scrutiny to *pro se* complaints from prisoners, even in contexts where immunities come into play, a significant number of cases should proceed beyond the initial pleading stage. By the time a case goes beyond its earliest stage, the judge or prosecutor may have to hire a lawyer to, for example, file an answer if the complaint is served, or represent her at an evidentiary hearing where the prisoner's credibility would be tested. *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1979).

Involvement in such litigations poses a grave systemic problem. If a judge or prosecutor faces numerous lawsuits like this one that she must defend, the quality of her decisionmaking during the adjudication of pending and future cases, and during sentencing, will be adversely affected. Prisoners could effectively intimidate judges and prosecutors from acting with the utter independence that their proper decisionmaking requires. The judge or prosecutor faced with such litigation would understandably keep an eye fixed on the possibility that a defendant on trial may later sue or harass the judge or prosecutor if her actions appear too harsh. Prosecutorial tactics before and during trial, judicial rulings before and during trial and judicial sentencing decisions would all be adversely affected. "The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." *Forrester,* 108 S.Ct. at 544. Unlike in *Forrester,* the significant nexus between the integrity of the decisionmaking process and the likely effect of prisoner litigation on the integrity of the decisionmaking process justifies our extension of absolute immunity. In *Forrester,* on the other hand, the relationship between the judge's administrative employment decisions and the integrity of the decisionmaking process was substantially more attenuated.[3]

Still, extending absolute immunity in these circumstances raises perplexing issues that require pause and careful deliberation. In this case, as I note above, we confront two primary problems under these standards commonly used to determine a judge's entitlement to absolute immunity.

First, the "judicial jurisdiction" extends to aspects of the decisionmaking process leading to conviction and sentencing during the time period when the judge is empow-

---

**3.** I recognize that judges may be "inevitably more sensitive to the ill effects that vexatious lawsuits can have on the judicial function than they are to similar dangers in other contexts." *Forrester,* 108 S.Ct. at 543, *citing, Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 2921, 57 L.Ed. 2d 895 (1978) (Rehnquist, J., concurring in part and dissenting in part). However, I am confident that our extension of absolute immunity results from necessity, not simply from our possible parochialism.

ered to make adjudicative decisions. These aspects of the decisionmaking process include, for example, rulings before trial on motions, rulings at trial on the admissibility of evidence, consideration of testimony and, finally, the imposition of a sentence if the defendant is convicted. It does not, for example, extend to every one of a judge's musings about a prison inmate whom the judge may have sentenced years earlier. If such a loose nexus sufficed, a judge would be protected from suit under § 1983 based on anything she might write or say over the years stemming from a case she earlier decided.

Second, there is an absence of sufficient corrective process in this context for a judge's alleged retaliatory misdeeds, a factor which has played a central role in developing the jurisprudence of absolute immunity. *See, e.g., McAlester v. Brown,* 469 F.2d 1280, 1283 (5th Cir.1972).[4] Most immunity cases arise in temporal contexts where a judge is engaged in decisionmaking. Thus, our jurisprudence commonly has emphasized the correctability of unconstitutional judicial behavior on appeal, for example, as an important factor making the erasure of meritorious civil claims far less disturbing than it otherwise would be. *Id.*

These novel problems, although substantial, are not insurmountable for two reasons. First, although in formal terms a judge providing information to a parole board after conviction and sentence is not acting within her jurisdiction, such a temporal distinction should not defeat the substantive policy goals and systemic concerns underlying the need to immunize judges from the intimidation and harassment that may adversely affect the quality of their decisionmaking. The information properly provided to a parole board flows directly

from the processes of trial, such as the taking of testimony and the admission of documentary evidence, during which time a judge and prosecutor would certainly be entitled to absolute immunity for their acts integral to the process. *Pierson,* 87 S.Ct. 1213; *Imbler,* 96 S.Ct. 984. To deny immunity to the official who properly provides information after conviction that was generated during a period of time shielded by immunity "would lift form above substance." *Forrester,* 108 S.Ct. at 546.

My first point concerning the relation between temporality and substance leads directly to my second point, which concerns substance alone. I would hold that absolute immunity attaches only to the extent that the information provided to the parole board is reasonably derivative of the adjudicatory process leading to conviction and sentencing. This process includes the observation of witnesses and the defendant. Such a standard would prevent a judge or prosecutor from receiving absolute immunity for offering retaliatory opinions and observations based on information not reasonably derived from the adjudicatory process. At the same time, the standard would allow a judge or prosecutor to offer her opinions and observations reasonably derived from information generated during the adjudicatory process. Such inferences, opinions and observations surely constitute information desired by the Texas Parole Board, see Part II(A) *supra,* or else the Texas legislature would have been content to have the Board rely solely on the paper record created at trial.

By utilizing the standard I have set out, judges and prosecutors would be well-protected from personal capacity suits. First, the actions of a judge or prosecutor in providing information to the Board that flows substantively from the processes of

---

**4.** The criminal analogue to Section 1983 is 18 U.S.C. § 242. *See* note 2 *supra.* Section 242 provides criminal penalties if, for example, a judge or prosecutor acting under color of state law "willfully" subjects an inhabitant of a state to the deprivation of rights protected by the Constitution and federal law. *Imbler,* 96 S.Ct. at 994 (discussing prosecutors); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974) (discussing judges). But Section 242,

not surprisingly, does not provide for a private right of action. Its efficacy is therefore limited. As I note in the text, corrective process commonly lies in a plaintiff's opportunity to appeal directly from a trial court's decision. Here, in contrast, corrective process under 18 U.S.C. § 242 would lie entirely within the discretion of a governmental body, the United States Department of Justice.

adjudication would be protected, although the judge or prosecutor would not be acting within her "jurisdiction" in a formal, temporal sense. Second, because information offered to the Board that is not reasonably derivative of the adjudicatory process would not be blanketed by absolute immunity, a judge or prosecutor could be liable under Section 1983 for retaliatory misdeeds in certain circumstances. This liability potential addresses the formal problems resulting in this context from the lack of sufficient corrective process.

Applying the standard I have discussed, one cannot determine whether the information that Johnson alleges the defendants provided in the letters was reasonably derivative of the adjudicatory process. Our circuit "demand[s] that the plaintiff's complaint state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Elliott v. Perez*, 751 F.2d 1472, 1473 (1985); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.1986) (plaintiff must state with particularity " 'the facts which show that official immunity does not shield ... defendants' "). The *pro se* nature of this action eases the plaintiff's burden. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). Johnson has met this burden by specifically contending that the defendants were acting outside of their jurisdiction, citing *Pierson*, 87 S.Ct. 1213, and *Imbler*, 96 S.Ct. 984. Thus, I would remand this case to allow Johnson to state, according to the standards enunciated in *Elliott v. Perez*, 751 F.2d at 1473, why the information allegedly provided to the parole board by the defendants was not reasonably derivative of the adjudicatory process.

In my view, the approach I have discussed meets two concerns at the core of our system of justice. First, it meets our systemic goals of protecting the integrity of the judicial and prosecutorial decision-making processes. And no less important, it leaves room for meritorious prisoner complaints that seek to vindicate rights guaranteed by the Federal Constitution.

### III. Official Capacity Claim

Finally, I believe that the district court should consider on remand the official capacity claim against the prosecutor. Johnson has alleged the existence of a policy or custom in his claim against the prosecutor in his official capacity. He claims that the prosecutor is a policymaker. *See Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The district court failed to consider this official capacity claim, holding only that Johnson has no constitutional right to parole and the defendants are absolutely immune. The majority does not remand on this claim for two reasons. First, the majority holds that the prosecutor is absolutely immune in his personal capacity. However, this immunity is immaterial to the official capacity claim. Second, the majority holds that a remand is unnecessary because the county has not been named and has not received sufficient notice of this lawsuit as required by *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). But because the lack of notice follows from the procedural status of this case, I cannot agree that the official capacity claim should be dismissed under *Brandon*. The district court dismissed the complaint *sua sponte* under 28 U.S.C. § 1915(d), and the complaint was not served even on the named defendants.

In light of the foregoing discussion, then, I would remand this case to the district court with instructions to (1) allow the plaintiff to state whether the information allegedly provided to the parole board was reasonably derived from the adjudicatory process; (2) consider the personal capacity retaliation claims against both defendants; and (3) consider the official capacity retaliation claim against the prosecutor.